**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| NEW JERSEY PRIMARY CARE ASSOCIATION, INC., | : | |
| Plaintiff, | : | Civil Action No. 12-413 (MAS) (TJB) |
| v. | : | |
| STATE OF NEW JERSEY DEPARTMENT OF HUMAN SERVICES, et al., | : | OPINION |
| Defendants. | : | |

**SHIPP, District Judge**

This matter comes before the Court upon Plaintiff New Jersey Primary Care Association, Inc.'s ("Plaintiff" or "NJPCA") motion to enforce the Court's September 27, 2013 Order (the "Order") and to require Defendants State of New Jersey Department of Human Services, Jennifer Velez, in her official capacity as Commissioner of the New Jersey Department of Human Services, New Jersey Department of Human Services Division of Medical Assistance and Health Services ("DMAHS"), and Valerie Harr, in her official capacity as Director of the DMAHS (collectively, the "State"), to show cause why they should not be held in contempt for failure to comply with the Order's terms. (ECF No. 112.) The State filed opposition (ECF No. 120), and Plaintiff filed a reply (ECF No. 127). The Court has carefully considered the parties' submissions and decided the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, Plaintiff's motion is denied without prejudice. The Court, however, will set the matter down for an evidentiary hearing.

I.  **Background**

The factual background of this case is set forth in previous opinions, and only those facts relevant to the present motion will be included here. The federal Medicaid statute requires states to make quarterly supplemental payments, or wraparound payments, to federally-qualified health centers ("FQHCs") "in an amount equal to the difference between a predetermined rate set by the Medicaid statute multiplied by the number of Medicaid patient encounters, and the amount paid to FQHCs by managed care organizations ("MCOs") . . . for all Medicaid-covered patient encounters." *N.J. Primary Care Ass'n v. State of N.J. Dep't of Human Servs.*, 722 F.3d 527, 528 (3d Cir. 2013).[1] In 2011, the State changed the methodology utilized to calculate wraparound payments so that prior payment by an MCO became a prerequisite to reimbursement. 3d Cir. Op. at 528-29. Plaintiff filed suit, and on July 5, 2012, the District Court granted Plaintiff's motions for summary judgment and a preliminary injunction, finding that the State's policy shift deprived FQHCs of full and timely wraparound payments. *N.J. Primary Care Ass'n v. N.J. Dep't of Human Services*, No. 12-413, 2012 WL 2594353, at *5 (D.N.J. July 5, 2012).

On July 9, 2013, the United States Court of Appeals for the Third Circuit affirmed the District Court's decision in part, finding that the "State's requirement of prior MCO payment before processing a wraparound reimbursement, absent an effective process by which FQHCs may challenge improperly denied claims within the statutorily mandated time period, violate[d] the federal Medicaid statute's requirement that FQHCs receive full and timely wraparound payments." 3d Cir. Op. at 536. The Order following remand: (1) granted Plaintiff's motions for summary judgment and preliminary injunction "solely on the ground that, absent a meaningful process to

---

[1] For ease of reference, the Court will cite the Third Circuit's Opinion in this matter as "3d Cir. Op."

challenge adverse payment determinations, the State's requirement that wraparound payments be contingent upon prior MCO payment violated the federal Medicaid statute"; (2) enjoined the State "from implementing a policy requiring prior MCO payment absent an adequate review process for FQHCs to meaningfully challenge adverse payment determinations and receive reimbursement from the State for valid, Medicaid-eligible claims that have been denied reimbursement by MCOs"; and (3) permitted the State "to require Plaintiff's member FQHCs to supply information conforming to columns 'J,' 'K,' 'L,' and 'M' on the State's supporting claim data spreadsheets." (ECF No. 99.) Plaintiff subsequently filed a motion to amend or alter the Order, which the Court denied. (ECF Nos. 110, 111.) Plaintiff now moves to enforce the Order and, additionally, requests that the Court require the State to show cause as to why it should not be held in contempt.[2]

## II.     Discussion

"The exercise of the power to find and to punish for contempt is . . . discretionary, and should be undertaken with the utmost sense of responsibility and circumspection." *F.T.C. v. Lane Labs-USA, Inc.*, No. 00-3174, 2011 WL 5828518, at *2 (D.N.J. Nov. 18, 2011) (citing *Thompson v. Johnson*, 410 F. Supp. 633, 640 (E.D. Pa. 1976)). In order for the Court to find a party in contempt, the moving party must demonstrate by clear and convincing evidence that: (1) a valid court order existed; (2) defendants had knowledge of the order; and (3) defendants disobeyed the order. *F.T.C. v. Lane Labs, USA, Inc.*, 624 F.3d 575, 582 (3d Cir. 2010) (quoting *Marshak v. Treadwell*, 595 F.3d 478, 485 (3d Cir. 2009)). "[A]n alleged contemnor's behavior need not be willful in order to contravene the applicable decree[,] . . . [and] good faith is not a defense to civil contempt." *Id.* (internal quotation marks and citations omitted). The parties in the present case

---

[2] An application for attorneys' fees is also pending before the Undersigned. That application will be resolved in a separate decision.

concede that a valid court order existed and Defendants had knowledge of the order. Accordingly, only the third element of contempt is in dispute.

Plaintiff argues that in spite of the State's representations to the Court that it would not use prior MCO payment as a proxy for Medicaid eligibility, the State continues to require that FQHCs submit MCO claims payment data prior to receiving Medicaid reimbursement and then uses that information as a proxy for Medicaid eligibility. (Pl.'s Br. 10-11, ECF No. 112-1.) Plaintiff also argues that the State has not provided FQHCs with a meaningful opportunity to challenge denied claims within the required statutory time frame. (Pl.'s Reply Br. 9-11, ECF No. 127.) The State, on the other hand, argues that it has met its obligations under the Third Circuit's decision and the Court's implementing Order. (Defs.' Opp'n Br. 1, ECF No. 120.)

In order to determine whether the State disobeyed the Court's Order, it is first necessary to revisit the Third Circuit's decision. The Third Circuit found that:

> [u]nder the Medicaid statute, the State is, indeed, responsible for reimbursement of the entire [prospective payment system ("PPS")] rate for *all* Medicaid-eligible encounters . . . . Here, however, because the State concedes that the methodology it has chosen to verify claim validity—the fact of prior MCO payment—will result in failures to fully reimburse FQHCs at the PPS rate for valid Medicaid claims, . . . the State's insistence on making wraparound payments contingent on prior MCO payment violates the federal Medicaid statute.

3d Cir. Op. at 539-40. In addition, the Third Circuit recognized that:

> while the statutory language is perhaps not as clear as one would wish, the tenor of the subsequent interpretations and the limited case law is clear: where MCOs do not pay out valid Medicaid claims, the FQHC should not be left holding the bag . . . . And, of course, the Medicaid statute does not support the State's contention that a wraparound payment *must* follow a prior MCO payment. By opting into a managed care system, the State cannot avoid its responsibility to reimburse FQHCs at the full PPS amount. Rather, Section 1396a(bb)(5)(B) requires the State to pay FQHCs *fully compensatory* supplemental payments not less frequently than four months after the State has received the claim for supplemental payment.
>
> . . . .
>
> If MCOs denied claims from FQHCs only because they were not eligible for reimbursement under Medicaid or because they were otherwise invalid, this would

4

> satisfy the State's obligation. The State concedes, however, that MCOs often deny payments for reasons unrelated to Medicaid, and we have already suggested some of these reasons—e.g., MCO delays, multiple visits in different locations in the same day, and visits with non-primary care physicians. The new policy would, therefore, inevitably exclude valid, Medicaid-eligible encounters and result in underpayment. Such a result would not comport with the Medicaid statute's requirement that FQHCs receive full and timely reimbursement under the PPS . . . . In the absence of any process by which an FQHC may promptly and effectively challenge an adverse MCO determination within the statutorily mandated time period, the District Court did not abuse its discretion in enjoining the State from refusing to process wraparound payments for all claims lacking prior MCO payment.

*Id.* at 541-43 (internal quotation marks and citations omitted).

The Third Circuit indicated that the State could require MCO data as part of FQHC reporting and use that data when evaluating whether a claim is reimbursable under Medicaid. It did not, however, hold that the State could refuse to make wraparound payments or withhold wraparound payments indefinitely for Medicaid-eligible encounters denied by MCOs based on MCO-specific requirements unrelated to Medicaid absent an effective process by which FQHCs could challenge improperly denied claims within the statutorily mandated time period. The Court will examine the MCO claims processing and effective appeals process issues in turn.

A.   **MCO Claims Processing**

Here, the NJPCA argues that the State has again tied wraparound payments to MCO denials for reasons entirely unrelated to Medicaid eligibility. The State concedes as much. According to the State:

> DMAHS denies claims when the MCO has properly denied those claims. Reasons for proper MCO denials may include that the member is ineligible, that the member does not meet age requirements for the procedure billed, that the member is covered by other insurance which must be billed first, that the claim was submitted to the incorrect MCO, that the claim was not timely filed, that a required referral was not submitted, that the provider is not the member's primary care physician, that the provider's term has lapsed, that the FQHC has failed to complete an attestation form, or that the provider is not credentialed as an MCO provider. The MCOs provide the reasons for their denials on remittance advices sent electronically to the

5

FQHCs for each claim. If the supporting claim data submitted to DMAHS shows a zero payment from the MCO and the FQHC fails to provide any supporting documentation to demonstrate that the MCO denial was improper and that the claim is valid and eligible for Medicaid reimbursement, DMAHS denies the claim.

DMAHS does not process claims which it cannot locate in any of its shared systems, which includes claims for which the MCO has not yet made a payment, referred to as "pending claims." If the MCO has not yet generated a remittance advice but has provided the FQHC with a preliminary notice that a claim has been approved for payment, and the FQHC provides the preliminary notice to DMAHS, DMAHS will issue a supplemental payment even though the claim is technically still pending a payment determination by the MCO.

(Defs.' Opp'n Br. 6-8 (internal citations and footnotes omitted).)

Accordingly, the State acknowledges that it denies claims for reasons other than Medicaid eligibility. The State confirms that several of its bases for "proper" denials are solely related to MCO requirements as opposed to whether an encounter is a valid Medicaid encounter. (*Id.*) The State, however, argues that "[r]equiring the FQHCs to complete MCO claims processing prior to DMAHS issuing a supplemental payment does not violate the Order." (*Id.* at 9.) The Court agrees with the State in principle. The Third Circuit's decision did not prohibit the State from requiring FQHCs to complete MCO claims processing prior to a supplemental payment *if* the State provides FQHCs with a meaningful appeal process and it remits wraparound payments for valid Medicaid encounters within the statutorily mandated time frame. Therefore, the Court does not find that the State violated the Order based solely on the fact that it requires FQHCs to complete claims processing prior to issuing supplemental payments. Nevertheless, MCO claims processing may implicate a failure to comply with the Court's Order if FQHCs are simultaneously deprived of a meaningful appeal process and *timely* wraparound payments.

### B. Meaningful Appeal Process

Based on the foregoing analysis, the critical inquiry for Plaintiff's motion is whether the State's review and appeal process, implemented after the Third Circuit's decision, is meaningful. Plaintiff asserts that the State has failed to devise a system that adequately addresses capitated and pending claims. (Pl.'s Reply Br. 8.) According to Plaintiff, at least one FQHC did not receive any wraparound payments for instances in which the MCO made a payment on a claim. (*Id.*) Plaintiff also argues that pending claims can be held in limbo and not paid by the MCO or the State. (*Id.* at 8-9.) In addition, Plaintiff asserts that the administrative review process fails to conform to federal law or the Third Circuit's decision. (*Id.* at 10.)

The State asserts that it now utilizes detailed procedures, which result in proper compensation to FQHCs that comply with the State's reporting requirements. With respect to pending claims, the State asserts that the MCO maximum processing time of ninety days leaves at least a month for the FQHC to submit a request for supplemental payment to DMAHS and for DMAHS to make the supplemental payment, if appropriate. (Defs.' Opp'n Br. 11.) The State argues that until the ninety days permitted to the MCO for claims processing has passed, it has not failed to make a payment and is not required to make a payment at the full PPS rate. (*Id.*) The State asserts that "it would be unduly burdensome to require DMAHS to make a payment at the full PPS rate for all pending claims, and then follow up to ensure that the FQHC reports the payment that is later received from the MCO so that the amount of the MCO payment can be recouped by DMAHS." (*Id.* at 13.) The State additionally argues that "[t]he internal appeal to DMAHS, [the Office of Administrative Law ("OAL")] fair hearing, and subsequent right of appeal to the Appellate Division of the Superior Court [of New Jersey] provide additional levels of protection. But the burden should not be on DMAHS to make the FQHCs whole while they correct their

errors." (*Id.* at 14.) The State asserts that "[i]f the FQHCs do not follow MCO processing procedures and do not alert DMAHS if the MCOs have acted improperly, then DMAHS should not be responsible for making a supplemental payment." (*Id.* at 15.)

The State also argues that the appeal process is adequate. According to the State:

> FQHCs may submit information demonstrating that an MCO denial was improper simultaneously with their requests for supplemental payment or as part of a subsequent request for an internal DMAHS appeal, and there are further levels of review before the OAL and the Appellate Division of the Superior Court if the FQHCs wish to avail themselves of those procedures. This process is more than adequate to ensure a meaningful opportunity to appeal improper MCO denials.

(*Id.* at 20.)

The Court has carefully considered the parties' arguments and it appears that the State has made efforts to comply with the Court's Order. For example, if an FQHC provides a valid reason for a zero payment and DMAHS is able to validate the reason during its prepayment review, it issues a supplemental payment at the full PPS rate. (*Id.* at 4.) The State also compares zero claim payments with information in its shared data systems and makes supplemental payments for claims it validates as capitated or bundled, even if the FQHC failed to complete or inserted incorrect or incomplete information in the comment field. (*Id.* at 4-5.) The Court, nevertheless, is unsettled. The State concedes that MCOs often deny payments for reasons unrelated to Medicaid eligibility and argues that the appeals process, which includes the OAL and Appellate Division, is adequate to address improper MCO denials. The Third Circuit, however, expressed concern regarding the appeals process. It stated:

> The State offers as an avenue of recourse to aggrieved FQHCs the administrative review process of N.J. Admin. Code § 10:49-10.3(a)(1), which permits a provider to request a hearing on any complaint arising out of the Medicaid claims process. Of course, if the State's policy is to deny wraparound payment *regardless* of Medicaid eligibility, the administrative review process is of no value. FQHCs must be able to meaningfully challenge adverse payment determinations

8

and receive reimbursement from the State for valid, Medicaid-eligible claims that have been denied reimbursement by MCOs.

3d Cir. Op. at 543 (citation omitted). The Third Circuit also stated:

> The MCO appeals mechanism does not appear to protect the interest of those FQHCs that received incorrect MCO determinations. Not only does this process take considerable time to reach an ultimate determination, but it fails to address more basic concerns: What if the MCO continues to wrongfully reject a Medicaid-eligible claim? Can an MCO's determination of claim validity end the inquiry?

*Id.* at 543 n.7. The Third Circuit further explained:

> Contrary to the State's claim, our conclusion does not create a substantial risk of double payment. FQHCs remain under an obligation to seek MCO reimbursement for wrongfully denied claims, and the State is required to assist in this process. If an FQHC later receives MCO reimbursement for a claim for which it has already received the full PPS wraparound amount, the State will be credited with this amount in a later reconciliation process. *See* N.J. Admin. Code § 10:66-1.5(d)(1)(viii)(4).
>
> Ultimately, if the system is functioning correctly (i.e., in the absence of bad faith or fraud), the conclusion we reach should not shift the resources one way or the other, only the timing. Had we found, for example, that the State need not process a wraparound payment until a claim had been accepted and paid by an MCO, an FQHC, through the MCO appeals process (or with intervention by the State), would be able to eventually receive reimbursement for wrongfully denied claims. Fundamentally at issue is which party must bear the cost of MCO errors or delays in reimbursement until these disputed claims can be reconciled. The text of the statute and its legislative purpose, subsequent administrative interpretations, and the limited case law, all place a thumb on the scale in favor of prompt and complete State reimbursement.

*Id.* at 543 n.8.

Here, the State admittedly does not pay wraparound payments for certain pending claims. As the Third Circuit explained, if those claims were simply denied by the MCOs because they were not eligible for reimbursement under Medicaid or because they were otherwise invalid, this would satisfy the State's obligation. If, however, the State has failed to provide wraparound payments for otherwise valid, Medicaid-eligible encounters within the statutorily mandated time

9

period, and this has resulted in continued underpayment to FQHCs, the State may be in violation of the Order.

The State asserts that NJPCA seeks to hold it in contempt without providing evidence that it has incorrectly denied a single claim for supplemental payment and that it is impossible for DMAHS to respond to vague allegations, approximations, and estimates. (Def.'s Opp'n Br. 25-26.) The State argues that only eight of New Jersey's twenty FQHCs have even availed themselves of the internal appeal process, and only two of those have requested further review by the OAL. (*Id.* at 20-21.) The State additionally argues that of the twelve centers that submitted declarations in connection with the pending motion, only four utilized the appeal process. (*Id.* at 21.) According to the State, "[i]t is baffling to DMAHS that FQHCs that have not availed themselves of this process, or that have not pursued all steps of the process, have submitted declarations in support of a motion saying the process is inadequate and that DMAHS is not meeting its obligations to make supplemental payments." (*Id.*) Finally, the State asserts that the administrative process in place through which the FQHCs can dispute claim denials is a more effective means to address individual claims than a federal motion to enforce an Order that never contemplated specific claims. (*Id.* at 27.)

Here, the Court is not inclined to order the State to show cause as to why it should not be found in contempt based on the current motion briefing and supporting declarations. The Court, nevertheless, is also not inclined to simply relinquish review to the state administrative process in light of the Third Circuit's decision and its own concerns regarding the State's procedures. Accordingly, the Court will deny Plaintiff's motion without prejudice and set the matter down for an evidentiary hearing. At that time, NJCPA will be afforded the opportunity to demonstrate the

State's alleged contempt by clear and convincing evidence. Additionally, the State will have the opportunity to defend NJPCA's claims.

### III. Conclusion

Based on the foregoing, Plaintiff's motion is denied without prejudice. The matter will be set down for an evidentiary hearing. The details will be set forth in the Order accompanying this Opinion.

s/ Michael A. Shipp  
**MICHAEL A. SHIPP**  
**UNITED STATES DISTRICT JUDGE**

Dated: April 30, 2015