**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| NEW JERSEY PRIMARY CARE ASSOCIATION, INC., | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 12-413 (MAS) (TJB) |
| | : | |
| v. | : | **MEMORANDUM OPINION** |
| | : | |
| STATE OF NEW JERSEY DEPARTMENT OF HUMAN SERVICES, et al., | : | |
| | : | |
| Defendants. | : | |

**SHIPP, District Judge**

This matter comes before the Court upon Plaintiff New Jersey Primary Care Association, Inc.'s ("Plaintiff" or "NJPCA") motion to strike the expert report of Billy Millwee, submitted by Defendants State of New Jersey Department of Human Services, Jennifer Velez, in her official capacity as Commissioner of the New Jersey Department of Human Services, New Jersey Department of Human Services Division of Medical Assistance and Health Services ("DMAHS"), and Valerie Harr, in her official capacity as Director of the DMAHS, (collectively, the "State") in support of its cross-motion for summary judgment. (ECF No. 185.) The State filed opposition (ECF No. 193) and Plaintiff replied (ECF No. 194). The Court has carefully considered the parties' submissions and decides this matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, Plaintiff's motion is denied without prejudice.

## I. Background

The factual background of this case is set forth in previous opinions, and only those facts relevant to the present motion will be included here. The federal Medicaid statute requires states to make quarterly supplemental payments, or wraparound payments, to federally-qualified health centers ("FQHCs") "in an amount equal to the difference between a predetermined rate set by the Medicaid statute multiplied by the number of Medicaid patient encounters, and the amount paid to FQHCs by managed care organizations ("MCOs") . . . for all Medicaid-covered patient encounters." *N.J. Primary Care Ass'n, Inc. v. State of N.J. Dep't of Human Servs.*, 722 F.3d 527, 528 (3d Cir. 2013).[1] In 2011, the State changed the methodology utilized to calculate wraparound payments so that prior payment by an MCO became a prerequisite to the State's payment of wraparound payments to the FQHCs. NJPCA 3d Cir. Op. at 528-29. Plaintiff filed suit, and on July 5, 2012, the District Court granted Plaintiff's motions for summary judgment and a preliminary injunction, finding that the State's policy shift deprived FQHCs of full and timely wraparound payments. *N.J. Primary Care Ass'n, Inc. v. State of N.J. Dep't of Human Servs.*, No. 12-413, 2012 WL 2594353, at *5 (D.N.J. July 5, 2012).

On July 9, 2013, the United States Court of Appeals for the Third Circuit affirmed the District Court's decision in part, finding that the "State's requirement of prior MCO payment before processing a wraparound reimbursement, absent an effective process by which FQHCs may challenge improperly denied claims within the statutorily mandated time period, violate[d] the federal Medicaid statute's requirement that FQHCs receive full and timely wraparound payments." NJPCA 3d Cir. Op. at 536. Accordingly, this Court's Order implementing the Third Circuit's mandate: (1) granted Plaintiff's motions for summary judgment and preliminary

---

[1] For ease of reference, the Court will cite the Third Circuit's Opinion in this matter as "NJPCA 3d Cir. Op."

injunction "solely on the ground that, absent a meaningful process to challenge adverse payment determinations, the State's requirement that wraparound payments be contingent upon prior MCO payment violated the federal Medicaid statute"; (2) enjoined the State "from implementing a policy requiring prior MCO payment absent an adequate review process for FQHCs to meaningfully challenge adverse payment determinations and receive reimbursement from the State for valid, Medicaid-eligible claims that have been denied reimbursement by MCOs"; and (3) permitted the State "to require Plaintiff's member FQHCs to supply information conforming to columns 'J,' 'K,' 'L,' and 'M' on the State's supporting claim data spreadsheets." (ECF No. 99.) On October 24, 2013, Plaintiff filed a motion to amend or alter the Order, which the Court denied. (ECF Nos. 110, 111.) On September 10, 2014, Plaintiff moved to enforce the Order and requested that the Court require the State to show cause as to why it should not be held in contempt. (ECF No. 112.) On April 30, 2015, the Court denied Plaintiff's motion to enforce without prejudice. (ECF No. 129.) On May 3, 2017, Plaintiff filed a motion to enforce judgment and/or for summary disposition (ECF No. 165) and on June 7, 2017, the State filed a cross-motion for summary judgment (ECF No. 168). The Court heard oral argument on November 20, 2017, and as a result of arguments raised during the hearing, administratively terminated the motions and requested supplemental briefing from the parties. (Dec. 19, 2017 Memorandum Order, ECF No. 179.) Plaintiff filed the instant motion to strike challenging the admissibility of the State's expert's report, submitted in support of the State's cross-motion for summary judgment. (ECF No. 185.)

## II.     Legal Standard

Rule 702 governs the admissibility of testimony by an expert witness. Fed. R. Evid. 702. Pursuant to Rule 702, a witness, who qualifies as an expert, may provide testimony if (i) the

3

expert's scientific, technical, or specialized knowledge will assist the trier of fact; (ii) "the testimony is based on sufficient facts or data . . . , [and the] testimony is the product of reliable principles and methods"; and (iii) "the expert has reliably applied the principles and methods to the facts of the case." *Id.* Essentially, Rule 702 embodies three requirements: "qualification, reliability and fit." *Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003) (citation omitted).

"[T]he district court acts as a gatekeeper, preventing [admissibility of] opinion testimony that does not meet the requirements of qualification, reliability[,] and fit." *Schneider*, 320 F.3d at 404. The party offering the expert testimony bears the burden of establishing the existence of each factor by a preponderance of the evidence. *See In re TMI Litig.*, 193 F.3d 613, 663 (3d Cir. 1999), *amended by* 199 F.3d 158 (3d Cir. 2000). "That inquiry requires the court to 'examine the expert's conclusions in order to determine whether they could reliably follow from the facts known to the expert and the methodology used.'" *Dzielak*, 2017 WL 1034197, at *4 (quoting *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 153 (3d Cir. 1999)). Rule 702, however, "has a liberal policy of admissibility." *Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 806 (3d Cir. 1997) (citation omitted). "If the expert meets [these] liberal minimum qualifications, then the level of the expert's expertise goes to credibility and weight, not admissibility." *Id.* at 809.

## III. Discussion

### A. Millwee's Report

In his report, entitled "Analysis of New Jersey Medicaid Compliance with FQHC Wraparound Payment Requirements," Millwee opined that "New Jersey has put into place a reasonable process to manage FQHC wraparound payments in managed care. There is a responsive process for FQHCs to appeal, both informally and formally. The process seems to be

working for a majority of the FQHCs." (Millwee Report 17-18, ECF No. 185-2.) Millwee reviewed various documents, including Plaintiff's expert report, deposition transcripts and certifications of various State personnel, including Kelly Chua, who is the manager of the Office of FQHC Policy and Reimbursement in DMAHS, the DMAHS Audit of FQHCs for July 1, 2010 through November 30, 2014 ("State Audit Report"), and prior court opinions, order and filings. (*Id.* at 19.)

## B.    Qualification

"Qualification refers to the requirement that the witness possess specialized expertise." *Id.* at 404. It is interpreted broadly; a wide variety of "knowledge, skills and training qualify an expert." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741 (3d Cir. 1994). Plaintiff argues that Millwee has no experience with FQHCs and based his evaluation of the State's procedures on his general experience with Medicaid managed care, ignoring the FQHC's unique position in the overall scheme. (Pl.'s Moving Br. 4-5, ECF No. 185.) Accordingly, Plaintiff argues that Millwee does not possess the requisite specialized knowledge to qualify as an expert. (*Id.* at 5.) In opposition, the State asserts that Millwee is fully qualified to offer his opinion based on years of experience with Medicaid in various capacities, both in the public and private sectors. (Def.'s Opp'n Br. 5, 7, ECF No. 193.) Here, the Court agrees with the State. Highlights from Millwee's professional background include: (i) service as the Texas Health and Human Services Commission Deputy Executive Commissioner and Texas Medicaid Director; (ii) service as a board member of the National Association of Medicaid Directors; and (iii) testifying in front of committees in the United States Congress and Senate (Millwee Report 2); and (iv) after concluding government service, establishing a consulting firm, with representative engagements that include working with the states of Louisiana and Texas (*id.* at 3). The Court finds that based

5

on Millwee's extensive experience with Medicaid, he is sufficiently qualified to offer an opinion in this matter.

## C. Reliability

To be reliable, "the expert's opinion must be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation'; [and] the expert must have 'good grounds' for his or her belief." *In re Paoli*, 35 F.3d at 742 (quoting *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 589 (1993)). "The inquiry envisioned by Rule 702 is . . . a flexible one." *Daubert*, 509 U.S. at 594. In evaluating technical testimony, indicia of reliability can include the expert's identification and discussion of design and performance standards, support in relevant literature, discussion of industry practice, review of previous product design and accident history, use of charts or diagrams to explain conclusions for the trier of fact, and support with scientific testing. *See Milanowicz v. Raymond Corp.*, 148 F. Supp. 2d 525, 532-35 (D.N.J. 2001).

Plaintiff argues that Millwee's report is unreliable because: (i) it is not based on sufficient facts or data; and (ii) he did not apply any expertise to the facts when he offered his opinion. (Pl.'s Moving Br. 5.) Plaintiff asserts that Millwee reviewed the "State's own expert report" and depositions of State representatives. (*Id.* at 7.) According to Plaintiff, Millwee merely reviewed the written description of the wraparound process, did not perform an independent review of claims information, and failed to consider the declarations of health center representatives and other data. (*Id.* at 6, 8.)

In opposition, the State asserts that Millwee only needed to have "good grounds" for his opinions—which are based on his review of the State's procedures for processing wraparound payments, the appeals process, data regarding the same, transcripts of depositions given by

6

relevant State officials, and Plaintiff's expert's report and supporting data—and was not required to review Plaintiff's self-serving declarations. (Def.'s Opp'n Br. 9-10.) Further, the State contends that Millwee did apply his expertise to the data supporting his opinion. (*Id.* at 10.) According to the State, Millwee considered the deposition testimony of the State officials that perform this process, Plaintiff's expert report, and the data underlying the report. (*Id.* at 11.)

Here, the Court finds that the State has shown Millwee's report to be sufficiently reliable and the report satisfies this element of the *Daubert* framework. The Third Circuit has recognized a "liberal policy of admissibility." *Pineda v. Ford Motor Co.*, 520 F.3d 237, 243 (3d Cir. 2008). "Rejection of expert testimony is the exception, not the rule." *Transweb, LLC v. 3M Innovative Properties, Co.*, No. 10-4413, 2012 U.S. Dist. LEXIS 97512, at *5 (D.N.J. July 13, 2012). Moreover, "[t]he grounds for the expert's opinion merely have to be good, they do not have to be perfect." *In re Paoli*, 35 F.3d at 744. Plaintiff's objections, accordingly, go more to weight than admissibility.

### D.    Fit

Finally, the expert's opinion must "fit the issues in the case," which means that it must be relevant for the purposes of the case and assist the trier of fact. *Schneider*, 320 F.3d at 404. "Rule 702's 'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility." *Daubert*, 509 U.S. at 591-92. Neither party explicitly addresses this element in its briefing, but arguably, their positions on Millwee's reliability also touch upon this element. (*See generally* Pl.'s Moving Br. and Pl.'s Reply Br.) Here, the Court finds that Millwee's report is sufficiently connected to the issues in the case and could be helpful to the trier of fact.

## IV.   Conclusion

Based on the foregoing, Plaintiff's motion to strike is denied without prejudice. To the extent necessary, in the event of a hearing or trial, Plaintiff may raise specific objections based upon the testimony elicited. An Order consistent with this Memorandum Opinion shall be entered.


s/ Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

Dated:   September 12, 2018